UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DAJUAN FURMAN,

      Petitioner,

                                        CASE NO. 13-11493
v.                                 HONORABLE NANCY G. EDMUNDS

RANDALL HAAS,

      Respondent.
_____/

**OPINION AND ORDER
DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND
DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, BUT
GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

      This matter has come before the Court on petitioner Dajuan Furman's *pro se* application for the writ of habeas corpus under 28 U.S.C. § 2254. Petitioner is a state prisoner at the G. Robert Cotton Correctional Facility in Jackson, Michigan. He has been convicted of armed robbery, Mich. Comp. Laws § 750.529, conspiracy to commit armed robbery, Mich. Comp. Laws § 750.157a, Mich. Comp. Laws § 750.529, assault with intent to rob while armed, Mich. Comp. Laws § 750.89, and possession of a firearm during the commission of a firearm (felony firearm), Mich. Comp. Laws § 750.227b. Petitioner alleges that (1) the trial court relied on inaccurate information at sentencing and incorrectly scored the sentencing guidelines, (2) the trial court erred when it set aside a plea agreement on its own motion, (3) the trial court departed upward from the sentencing agreement, and (4) he pleaded guilty out of fear of being sentenced to life imprisonment if he went to trial. Respondent Randall Haas argues in an answer to the

petition filed through the Michigan Attorney General that Petitioner did not exhaust state remedies for his third and fourth claims and that all of Petitioner's claims either lack merit or are not cognizable on habeas review. The Court agrees that Petitioner's claims do not warrant habeas corpus relief. Accordingly, the petition will be denied.

## I.  Background

Petitioner's convictions arose from a series of armed robberies that he and his accomplices committed in Detroit, Michigan in 2009. The Wayne County prosecutor charged Petitioner with multiple counts in four different cases. In case number 09-27591, Petitioner was charged with two counts of assault with intent to commit robbery while armed, one count of conspiracy to commit armed robbery, and one count of felony firearm. In case number 09-27592, Petitioner was charged with armed robbery and conspiracy to commit armed robbery. In case number 09-27596, Petitioner was charged with two counts of armed robbery, one count of conspiracy to commit armed robbery, and one count of felony firearm. And in case number 09-30711, Petitioner was charged with armed robbery, assault with intent to commit armed robbery, conspiracy to commit armed robbery, and felony firearm.

On February 11, 2010, Petitioner pleaded guilty to several of the charges in return for the dismissal of case number 09-27592 and the felony firearm charges in the other three cases. It appears from the record that the prosecution also agreed to dismiss the conspiracy charge in case number 09-30711. The plea agreement required Petitioner to cooperate with the prosecution and to testify truthfully against other people

involved in the crimes. The parties also agreed that the sentence would be fourteen to twenty-five years.

On July 27, 2010, the trial court set aside the guilty pleas on the basis that Petitioner had lied under oath when he testified in a co-defendant's criminal case. Two days later, Petitioner pleaded guilty to all the original charges, including four counts of armed robbery, four counts of conspiracy to commit armed robbery, three counts of assault with intent to rob while armed, and three counts of felony firearm. There was no plea agreement. On August 16, 2010, the trial court sentenced Petitioner to two years in prison for the felony firearm convictions, followed by concurrent terms of 285 months (twenty-three years, nine months) to forty years for the assault and conspiracy convictions in case number 09-27591 and 225 months (eighteen years, nine months) to forty years for the robbery, conspiracy, and assault convictions in case numbers 09-27592, 09-27596, and 09-30711.

In 2011, Petitioner moved for re-sentencing or for reinstatement of the original plea and sentence agreement. He maintained that offense variable 14 of the Michigan sentencing guidelines was improperly scored and that the trial court erred by vacating the initial plea agreement on its own motion. The trial court held a hearing on the motion and denied it. Petitioner raised the same issues in an application for leave to appeal in the Michigan Court of Appeals, which affirmed Petitioner's convictions and sentence in an unpublished, *per curiam* opinion. *See People v. Furman*, Nos. 305536, 305538, 305541, and 305543, 2012 WL 4900208 (Mich. Ct. App. Oct. 16, 2012).

In a subsequent application for leave to appeal in the Michigan Supreme Court, Petitioner raised several claims. He stated that: (1) he was entitled to be re-sentenced according to properly scored guidelines; (2) the Michigan Court of Appeals confused the facts, as he did not lie about anything in his co-defendant's case; (3) the trial court erred when it set aside the plea agreement on its own motion; (4) his plea and sentence agreement should be reinstated; and (5) he was forced to participate in the crimes by a co-defendant. On March 4, 2013, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. Furman*, 826 N.W.2d 727 (Mich. 2013)(table).[1]

On April 2, 2013, Petitioner filed his habeas corpus petition. His grounds for relief are: (1) the trial court incorrectly scored offense variable 14 of the state sentencing guidelines and sentenced him on the basis of inaccurate information; (2) the trial court erred when it set aside his plea agreement on its own motion; (3) the trial court violated his rights by departing upward from the sentencing agreement; and (4) he pleaded guilty out of fear.

Respondent contends that Petitioner did not exhaust state remedies for his third and fourth claims, as required by 28 U.S.C. § 2254(b)(1). The exhaustion rule, however, is not a jurisdictional requirement, *Castille v. Peoples*, 489 U.S. 346, 349 (1989), and "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). Because Petitioner's claims do not

---

[1] Justice David F. Viviano did not participate in the decision.

warrant habeas relief, the Court proceeds to the merits of his claims, despite the alleged failure to exhaust state remedies for claims three and four.

## II. Standard of Review

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, 97 (2011). Pursuant to § 2254, the court may not grant a state prisoner's application for the writ of habeas corpus unless the state court's adjudication of the prisoner's claims on the merits

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., opinion of the Court for Part II).

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)." *Renico v. Lett*, 559 U.S. 766, 773 (2010).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his claims "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

### III. Petitioner's Claims

**A. The Sentencing Guidelines**

Petitioner alleges that he is entitled to re-sentencing because the state trial court incorrectly assessed ten points for offense variable 14 of the state sentencing guidelines. Offense variable 14 pertains to the offender's role in the crime. A score of ten points is appropriate if "[t]he offender was a leader in a multiple offender situation."

Mich. Comp. Laws § 777.44(1)(a). Petitioner contends that he should not have received any points for offense variable 14 because he was not a leader in the crimes.

Whether or not the state court misinterpreted or misapplied state sentencing guidelines "is a matter of state concern only," *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003), and "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). Consequently, Petitioner's allegation that the trial court incorrectly scored offense variable 14 of the state sentencing guidelines is not a cognizable claim on federal habeas corpus review. *Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007); *McPhail v. Renico*, 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006); *Robinson v. Stegall*, 157 F. Supp. 2d 802, 823 (E.D. Mich. 2001).

In state court, Petitioner couched his claim in constitutional terms by asserting a due process right to be sentenced on accurate information. In *Townsend v. Burke*, 334 U.S. 736 (1948), the Supreme Court stated that a sentence based on "extensively and materially false" information, which the prisoner had no opportunity to correct through counsel, violates due process. *Id.* at 741.

Petitioner claims that the trial court relied on erroneous information when it concluded that he was a leader in the offense. The record, however, supports the trial court's conclusion, because Petitioner drove the vehicle used in the robberies and provided one of the guns used to facilitate the crimes. (Sentencing Tr., 14, Aug. 16, 2010; Mot. Hr'g, 3-4, Apr. 1, 2011.)

Petitioner nevertheless asserts that he acted under duress due to a co-defendant's threat to hurt him or his mother if he did not bring a gun and drive.

Petitioner raised this argument in an affidavit attached to his motion for re-sentencing, which the trial court denied. The trial court noted at a hearing on the motion that Petitioner was a liar, that he drove the car used in the robberies, provided a gun, waited for everyone to come back from the robberies, and, in one case, jumped out of the vehicle to pursue a victim who tried to escape. (Mot. Hr'g, 4-5, Apr. 1, 2011.) The state court's credibility determination is entitled to great deference on habeas corpus review. *Howell v. Hodge*, 710 F.3d 381, 388 (6th Cir. 2013) (Stranch, C.J., concurring). The Michigan Court of Appeals, moreover, agreed that the evidence supported a score of ten for offense variable 14, and a state court's interpretation of state law binds a federal court on habeas corpus review. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

The Court concludes that the state trial court did not rely on extensively or materially false information when it determined that Petitioner was a leader in the crimes. Therefore, Petitioner's constitutional right to due process was not violated at sentencing, and he has no right to relief on the basis of his first claim.

## B. Setting Aside the Plea Agreement

In his second claim, Petitioner challenges the state trial court's decision to set aside the initial plea and sentencing agreement on its own motion. Petitioner contends that he fulfilled his part of the plea agreement by testifying against his co-defendants and, therefore, the trial court should not have vacated the plea and sentencing agreement.

In his state court brief, Petitioner argued that, when a plea must be withdrawn in the interest of justice, the defendant must move to withdraw the plea or consent to the

8

withdrawal. *See* Mich. Ct. R. 6.310(B)(1) (stating that a plea may be withdrawn after acceptance, but before sentencing, "on the defendant's motion or with the defendant's consent only in the interest of justice . . . ."). Petitioner also argued that, even assuming he testified untruthfully, only the prosecutor may move to vacate a plea on that basis. *See* Mich. Ct. R. 6.310(E) (stating that, "[o]n the prosecutor's motion, the court may vacate a plea if the defendant has failed to comply with the terms of a plea agreement").

Petitioner's arguments are based solely on state law, and "[a] federal court may not issue a writ of habeas corpus on the basis of a perceived error of state law." *Pulley v. Harris,* 465 U.S. 37, 41 (1984). Furthermore, the Michigan Court of Appeals determined that a reversal of Petitioner's convictions on the basis of the trial court's failure to comply with the court rule was unwarranted because it would elevate form over substance. *Furman*, 2012 WL 4900208, at *3. The Court of Appeals also determined that Petitioner's claim lacked merit and that the trial court did not abuse its discretion when it concluded that Petitioner failed to testify truthfully against one of his accomplices.[2]

---

[2]   The Court of Appeals pointed out the following inconsistencies in Petitioner's testimony at an accomplice's trials:

>   At [Trammanuel] Durham's first trial on July 20, 2010, Furman initially testified that he did not see where the shots came from or who fired them. He later stated that he saw Durham shoot him and explained that before the shots were fired, he saw Durham pointing a gun in his direction. Furman admitted that he informed the police that as he returned to the vehicle, Durham began shooting at him. Furman further testified that he was hospitalized that evening and Durham visited him in the hospital the next morning. At first, Furman testified that he was sleeping at the time of Durham's visit. Furman later explained that he did in fact speak with Durham who apologized for shooting him.
>
>   On July 26, 2010, at Durham's second trial, Furman also testified

Petitioner has not rebutted the state court's findings of fact with "clear and convincing evidence," 28 U.S.C. § 2254(e)(1), and he has not cited any Supreme Court decision holding that a state court violates the Constitution when it vacates a plea and sentencing agreement on its own motion. The Court therefore declines to grant relief on Petitioner's second claim.

**C. Departure from the Sentencing Agreement**

In his third claim, Petitioner appears to allege that the trial court violated his rights by departing from the initial plea and sentencing agreement, which called for a sentence of fourteen to twenty-five years. While it is true that Petitioner was sentenced to more than what he was promised in the initial plea agreement,[3] the trial court set aside the plea agreement after concluding that Petitioner did not comply with the terms of the

---

> regarding being shot. Furman initially testified that Durham fired the gun that shot him and he did not see anyone else firing a gun at the time. Furman later indicated that he did not see Durham fire the gun, he was not sure where the gun was pointed when it was fired, and did not recall stating that the gun was fired in his direction. Furman, however, later testified that Durham fired at least two shots and had shot him by mistake. Furman further stated that he did not advise the police that Durham began shooting at him as he returned to the vehicle. Instead, Furman indicated that he merely told the police that he heard gunshots and put his arm up. Furman further advised that his mother told him that Durham came to see him at the hospital to apologize; however, Furman was asleep at the time of his visit.

*Furman*, 2012 WL 4900208, at *2. The Court of Appeals concluded that, "[b]ecause Furman's testimony regarding the facts surrounding his shooting was inconsistent and contradictory, the [trial] court did not abuse its discretion when it found that Furman failed to testify truthfully against Durham." *Id*.

[3] Petitioner received a sentence of twenty-three years, nine months to forty years in case number 09-27591 and eighteen years, nine months, to forty years in the other three cases plus two years for the felony firearm convictions. (Sentence Tr., 19, Aug. 16, 2010.) The plea and sentence agreement called for a sentence of fourteen to twenty-five years. (Final Conference/Plea Tr., 4, Feb. 11, 2010.)

agreement. Petitioner then pleaded guilty as charged without the benefit of a plea and sentencing agreement and after acknowledging that the former agreement was no longer on the table and that there were no deals in the case. (Plea Tr., 9, July 29, 2010.)

Petitioner's challenge to the length of his sentence lacks merit for an additional reason: "trial courts have historically been given wide discretion in determining 'the type and extent of punishment for convicted defendants,' " provided that the sentence remains within statutory limits. *Austin v. Jackson*, 213 F.3d 298, 301 (6th Cir. 2000) (quoting *Williams v. New York*, 337 U.S. 241, 245 (1949)). To prevail on his claim, Petitioner must show that his sentence exceeded the statutory limits or was wholly unauthorized by law. *Vliet v. Renico*, 193 F. Supp. 2d 1010, 1014 (E.D. Mich. 2002) (citing *Haynes v. Butler*, 825 F.2d 921, 923 (5th Cir. 1987)).

Petitioner's sentence fell within the state sentencing guidelines, and it did not exceed the statutory maximum.[4] As such, Petitioner's sentence was neither illegal nor "cruel and unusual punishment" under the Eighth Amendment. *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995). The Court therefore declines to grant relief on Petitioner's challenge to the length or severity of his sentence.

## D. The Guilty Plea

In his fourth and final claim, Petitioner implies that his guilty plea was involuntary because he pleaded guilty out of fear. Specifically, Petitioner claims that he was fifteen

---

[4] The felony firearm conviction carried a mandatory sentence of two years in prison, and the other offenses carried a maximum sentence of life imprisonment. (Plea Tr., 8-11, July 29, 2010.)

years old at the time and that he pleaded guilty because his attorney told him he would get life imprisonment if he went to trial.

"A guilty or no-contest plea involves a waiver of many substantial constitutional rights." *Fautenberry v. Mitchell*, 515 F.3d 614, 636 (6th Cir. 2008). Consequently, it must be a voluntary, knowing, and intelligent act "done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). For a plea to be valid, the defendant must appreciate the consequences of his waiver of constitutional rights, waive his rights without being coerced to do so, and understand the rights that he is surrendering by pleading guilty. *Ruelas v. Wolfenbarger*, 580 F.3d 403, 408 (6th Cir. 2009). The defendant also must be aware of the maximum sentence that could be imposed. *Id*. at 408. And because an involuntary plea is "an impairment of a defendant's substantial rights," *United States v. Martin*, 668 F.3d 787, 792 (6th Cir. 2012), courts must consider all the relevant circumstances when determining whether a plea was voluntary. *Brady*, 397 U.S. at 749.

The trial court informed Petitioner at the plea proceeding that the felony firearm charges carried a mandatory sentence of two years in prison and that his sentence on those charges would have to be served before his sentence on the other counts. The trial court also informed Petitioner that the other charges carried a maximum sentence of life imprisonment. Petitioner claimed to understand the penalties for his crimes and the rights that he was waiving by pleading guilty. He then said that he still wished to plead guilty. Although the trial court gave Petitioner an opportunity to ask questions

about any of the things it had said, Petitioner stated that he had no questions, and he subsequently provided a factual basis for his pleas. (Plea Tr. 8-34, July 29, 2010.) Nothing in the plea transcript suggests that Petitioner's plea was involuntary.

Petitioner claims that he pleaded guilty out of fear of life imprisonment if he went to trial and were convicted. But a guilty plea is not involuntary if the defendant chooses to plead guilty rather than risk the possibility of a greater penalty following a trial and guilty verdict. *Brady*, 397 U.S. at 749-50. The Court therefore finds no merit in Petitioner's claim that his guilty plea was involuntary.

## IV. Conclusion

The state courts' rejection of Petitioner's claims did not result in decisions that were contrary to Supreme Court precedent, unreasonable applications of Supreme Court precedent, or unreasonable determinations of the facts. The state-court decisions certainly were not "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. The Court therefore denies the petition for a writ of habeas corpus and dismisses this case.

The Court declines to grant a certificate of appealability because reasonable jurists would not disagree with the Court's resolution of Petitioner's claims, nor conclude that Petitioner's claims deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Petitioner nevertheless may proceed *in forma pauperis* on appeal without further authorization, because he was granted *in forma pauperis* status in this Court. Fed. R. App. P. 24(a)(3).

                                                s/ Nancy G. Edmunds
                                                NANCY G. EDMUNDS
                                                UNITED STATES DISTRICT JUDGE

Dated: September 16, 2015

### CERTIFICATE OF SERVICE

I hereby certify that a copy of this Order was served upon counsel and/or parties of record on this 16th day of September, 2015 by electronic means and/or regular mail.

                                                s/ Carol J Bethel
                                                Case Manager